# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**DAVID DEKOTAL SHARPE,**

      **Plaintiff,**

**v.**                          **Case No.: 5:16-cv-3841**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 9, 12, 13).

---

[1] Pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the current Acting Commissioner of the Social Security Administration, Nancy A. Berryhill, is substituted for former Acting Commissioner, Carolyn W. Colvin, as Defendant in this action.

The undersigned has thoroughly considered the evidence, the applicable law, and the arguments of counsel. For the following reasons, the undersigned **PROPOSES** that that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 9), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 12); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; **CLOSE** this case statistically and **PLACE** it on the Court's inactive docket, subject to reopening statistically upon motion of either party pending the outcome of the administrative proceedings.

I.  **Procedural History**

On December 16, 2011 and December 29, 2011, respectively, Plaintiff, David Dekotal Sharpe ("Claimant"), filed applications for DIB and SSI, alleging a disability onset date of November 6, 2011, (Tr. at 368, 371), due to "broken left finger, shattered ulna bone in left arm, fractured mandible, right knee problems and pains, traumatic brain injury, neck problems and pain, ptsd [Post-traumatic Stress Disorder], depression, anxiety, sleeping problems, [and] acid reflux." (Tr. at 394). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 163). Claimant filed a request for an administrative hearing, (Tr. at 291), which was initially held on March 10, 2014, before the Honorable William R. Paxton, Administrative Law Judge ("ALJ"). (Tr. at 180-84). The ALJ continued the hearing so that both physical and psychological consulting examinations could be performed. On July 22, 2014, the ALJ conducted a supplemental hearing. (Tr. at 185-206). By written decision dated July 30,

2014, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 163-75). The ALJ's decision became the final decision of the Commissioner on December 23, 2015, when the Appeals Council denied Claimant's request for review. (Tr. 8-11).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed an Answer opposing Claimant's complaint, and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Claimant filed a Brief in Support of Judgment on the Pleadings, (ECF No. 9), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 12), to which Claimant replied. (ECF No. 13). Consequently, the matter is fully briefed and ready for resolution.

## II.    __Claimant's Background__

Claimant was 32 years old at the time he filed the instant applications for benefits, and 35 years old on the date of the ALJ's decision. (Tr. at 163, 368). He has an associate's degree in automotive technology, attends college, and communicates in English. (Tr. at 189, 393, 395). Claimant has previous work experience as an automobile mechanic/technician, package sorter for UPS, roofer, fast food restaurant crew trainer, and United States Army recruiter. (Tr. at 191-93, 396).

## III.    __Summary of ALJ's Decision__

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process

for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age,

education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents her findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in *Id.* §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation of extended duration) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses

the claimant's residual mental function. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through March 31, 2013. (Tr. at 165, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since November 6, 2011, the alleged disability onset date. (Tr. at 165-66, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "history of left distal ulna and left hand fractures, arthralgias/fibromyalgia, unspecified depressive disorder, post-traumatic stress disorder, antisocial personality disorder, and panic disorder." (Tr. at 166, Finding No. 3). The ALJ considered Claimant's additional alleged impairments of right mandibular fracture, history of endocarditis, sensorineural hearing loss, chronic bronchitis, and history of polysubstance abuse in remission. (*Id.*). However, the ALJ found these alleged impairments to be non-severe, as they did not cause a significant limitation to Claimant's ability to perform basic work activities or satisfy the durational requirements to establish disability (*Id.*).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 166-68 Finding No. 4). Accordingly, he determined that

Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except he can never perform climbing of
> ladders, ropes, or scaffolds. He can occasionally perform balancing,
> kneeling, stooping, crouching, and climbing of ramps and stairs. He must
> avoid concentrated exposure to extreme cold and vibration; and all
> exposure to hazards such as heights and machinery. He is limited to work
> in a stable work environment where there would be only occasional changes
> to the routine work setting. He is limited to understanding, remembering,
> and carrying out simple instructions, to no interaction with the public, and
> to occasional interaction with co-workers and supervisors.

(Tr. at 168-73, Finding No. 5). At the fourth step, the ALJ determined that Claimant was unable to perform any past relevant work. (Tr. at 173, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in substantial gainful activity. (Tr. at 173-75, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1979 and was defined as a younger individual age 18-49; (2) he had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that the Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 173-74, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform jobs that existed in significant numbers in the national economy, including work in light, unskilled occupations; such as, mail clerk, non-postal; janitorial positions; and sorter. (Tr. at 174-75, Finding No. 10). In the category of sedentary, unskilled occupations, Claimant could work as a surveillance systems monitor, electronics worker, or addresser. (*Id.*). Therefore, the ALJ concluded that Claimant was not disabled and was not entitled to benefits. (Tr. at 175, Finding No. 11).

## IV.   **Claimant's Challenge to the Commissioner's Decision**

Claimant raises two challenges to the Commissioner's decision. First, he argues that the case should be remanded under sentence six of 42 U.S.C. § 405(g) based upon new and material evidence submitted to the Court. (ECF No. 9 at 9-11). The evidence provided by Claimant includes three disability ratings issued by the Department of Veterans Affairs ("VA") and a written decision by a VA Decision Review Officer. (ECF Nos. 9-1, 9-2, 9-3). According to Claimant, the VA's disability ratings pertain to the period at issue and "had they been available and given the weight required by the ALJ, would have changed the ALJ's decision regarding [Claimant's] credibility and the RFC he found." (ECF No. 9 at 11).

Second, Claimant contends that the ALJ failed to properly address Claimant's moderate limitations in persistence, pace, or concentration in the RFC finding and in the controlling question posed to the vocational expert. (*Id.* at 11-13). Relying on the United States Court of Appeals for the Fourth Circuit's ("Fourth Circuit") opinion in *Monroe v. Colvin,* 826 F.3d 176 (4th Cir. 2016), Claimant asserts that the ALJ should have provided an explanation for the RFC finding, building an accurate and logical bridge from the evidence of Claimant's limitations in persistence, pace, or concentration to the limitations ultimately incorporated into the RFC finding. Claimant argues that the ALJ failed to so and compounded the error by asking the vocational expert a controlling hypothetical question that lacked a fair presentation of Claimant's limitations.

In response, the Commissioner claims that a sentence six remand is not warranted in this case, because the additional evidence submitted by Claimant would not have changed the ALJ's decision. (ECF No. 12 at 10-13). The Commissioner posits that the new evidence actually substantiates the ALJ's findings and confirms Claimant's ability to

perform the jobs identified by the vocational expert and adopted by the ALJ. As to the second challenge, the Commissioner argues that the limitations contained in the RFC finding and posed to the vocational expert fully accounted for Claimant's impairments. (*Id.* at 13-14). The Commissioner contends that the evidence regarding Claimant's concentration, persistence, or pace do not support additional limitations and points out that Claimant was able to attend college and obtain a Bachelor's degree during the pendency of the disability process, suggesting that his concentration, persistence, and pace are not significantly impaired.

V.   **Relevant Medical Evidence**

The undersigned has examined all of the evidence in the record, including the medical evidence. Given that the issues in dispute primarily involve the newly submitted evidence and Claimant's limitations in concentration, persistence, or pace, the following summary of the medical evidence is limited to the records most pertinent to those issues.

### A. *Records from the Department of Veterans Affairs*

On December 29, 2010, Claimant completed a 42-day stay at the Veterans Affairs Medical Center ("VAMC") in Salem, Virginia for opiate dependence, Post-traumatic Stress Disorder ("PTSD"), and antisocial personality disorder. (Tr. at 525-28). Claimant presented with a long history of alcohol and drug use with no appreciable period of sobriety. He had previously been in a detoxification program at the VAMC, but had not stopped abusing substances afterward. Claimant reported receiving outpatient psychological treatment for PTSD. He was divorced, with no children, and unemployed. Claimant's mental status examination prior to discharge was normal and his opiate dependence was in early full remission. His current behavioral and emotional functioning was stable with no acute problems. Claimant was instructed to follow-up in the VAMC's

suboxone clinic. (*Id.*).

On November 9, 2011, Claimant was admitted to the Salem VAMC in follow-up after have been assaulted three days earlier by two men intent on stealing Claimant's suboxone. (Tr. at 521). Claimant reported that he was beaten repeatedly with an axe handle, causing fractures to his left ulna, right jaw, and 4th finger of his left hand, as well as a depression of his nasal bone. (Tr. at 521-22). Claimant also discussed his prior diagnosis of PTSD, indicating that he was in outpatient treatment and received prescriptions for citalopram (Celexa) and Ambien. (Tr. at 522, 526).

In December 2011, Claimant was seen in the VAMC's suboxone clinic on multiple occasions. (Tr. at 547-64). He complained of ongoing pain related to his injuries and reported that he was scheduled for surgery on his jaw. Claimant expressed feeling stress due to his inability to work. He was having difficulties complying with the requirements of the clinic, including the rule that he not use substances other than suboxone, and was told that his continued noncompliance would result in discharge from the clinic. Claimant explained that he was having increased stress and anxiety and was self-medicating. He was advised that he needed to see a separate clinician in the mental hygiene clinic for his PTSD symptoms. His Global Assessment of Functioning ("GAF") score during this period was 40.[2]

---

[2] The Global Assessment of Functioning ("GAF") Scale is a 100-point scale that rates "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," but "do[es] not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic Statistical Manual of Mental Disorders*, Americ. Psych. Assoc, 32 (4th Ed. 2002) ("DSM-IV"). On the GAF scale, a higher score correlates with a less severe impairment. It should be noted that in the latest edition of the *Diagnostic and Statistical Manual of Mental Disorders*, DSM-5, the GAF scale was abandoned as a measurement tool. A GAF score of 31-40 indicates that the patient had some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). DSM-IV at 32.

Claimant presented to the Salem VAMC's mental hygiene clinic on January 11, 2012 for treatment and evaluation of his PTSD symptoms. (Tr. at 541-46). He reported an increase in his symptoms since the assault in November 2011; in particular, he was experiencing flashbacks, hypervigilance, depression, anxiety, nightmares, and intrusive thoughts. Claimant stated that he had a happy childhood, had completed an associate's degree, and was married for eight years before getting a divorce. He indicated that he and his ex-wife were currently living together and planned to remarry. Claimant admitted to having an inconsistent work history, primarily due to substance abuse. However, his ex-wife did not abuse substance and was very supportive of his efforts to get clean. Claimant had a history of legal problems, but had no recent issues. On mental status examination, Claimant was alert, fidgety, anxious and cooperative. He appeared to be in a hurry, but had no psychomotor agitation. Claimant was diagnosed with chronic PTSD, opioid dependence in full sustained remission, and alcohol and polysubstance abuse in full sustained remission. He was given a GAF score of 55.[3] Claimant's medications were changed to mirtazapine (Remeron) and Seroquel, and the prescription of Celexa was discontinued. He was instructed to follow-up in the mental hygiene clinic in four to six weeks to begin therapy. (*Id.*).

By May 29, 2012, Claimant was doing well in the suboxone clinic. (Tr. at 650-52). He had not used drugs or alcohol in months and was attending his sessions. Claimant reported going to church and doing odd jobs like yard work and landscaping. His mental

---

[3] A GAF score between 51 and 60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34. GAF scores between 51 and 60 indicate "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32.

status examination was normal. However, when the clinician suggested tapering his dose of suboxone, Claimant became anxious and expressed concern that he would relapse. He was diagnosed with opioid dependence, benzodiazepine dependence, PTSD, and antisocial personality disorder. His GAF score was 40.

Claimant reported in July 2012 that he was doing well on a slightly lower dose of suboxone. (Tr. at 913-14). He indicated that he had been approved for a GI bill for school and planned to start in the Fall. Claimant had no new complaints and his mental status examination was normal. He was instructed to continue on suboxone and return to the suboxone clinic as scheduled.

On September 19, 2012, Claimant presented to the suboxone clinic for follow-up. (Tr. at 907-08). He reported being mildly stressed over school, but was doing well overall. He was attending school full-time and living in a stable home environment. His mental status examination was normal, and he was told to continue his current therapy. Similarly, in October and November, Claimant was doing well on suboxone, going to school, getting good grades, and attending community meetings. (Tr. at 903-06). On December 11, 2012, Claimant's mental health treatment was transferred to a social worker in conjunction with the suboxone clinic. (Tr. at 901-02).

The following day, Claimant presented to the suboxone clinic. (Tr. at 899-900). He was very upset because his truck had been stolen. However, he was doing well on his dosage of suboxone, and his mental status examination was normal. Claimant was instructed to continue with his current therapy.

When Claimant returned to the clinic on January 8, 2013, he reported that the holidays had been stressful. (Tr. at 896-98). Claimant advised the clinician that he was starting a new semester in school, working on a degree in social work, and would not be

able to attend sessions scheduled at the Salem VAMC. He agreed to attend community meetings locally and come to the suboxone clinic on Tuesdays at 8:00 a.m. Claimant was doing well on his current dose of suboxone and did not want to taper any further at the present time. His diagnoses and mental status examination were unchanged.

In February 2013, Claimant asked to be excused from group sessions in view of his school schedule. (Tr. at 888-89). Claimant stated that he had made the Dean's List in the Fall and continued to do well in school. He had not used alcohol or drugs, denied having depression or anxiety, and felt stable on his current dose of suboxone. Claimant's mental status examination was normal. Claimant agreed to decrease his suboxone dosage, although he was somewhat hesitant to do so.  At his visit in March 2013, Claimant stated that the reduced dosage had proven difficult for him, so he did not want to do any further tapering. (Tr. at 882). However, overall, Claimant described "[d]oing well." (*Id.*).

In April 2013, Claimant had two appointments with the suboxone clinic. (Tr. at 866-81). On April 2, 2013, Claimant advised Dr. Lauren Lehmann that "[t]hings are going well." (Tr. at 878). He indicated that he was in school on a full-time basis and was on the Dean's list. Claimant resisted a decrease in his dose of suboxone, but denied using drugs or alcohol. His mental status examination was normal except for a short attention span. His diagnoses and GAF score had not changed. On April 29, 2013, Claimant reported that he continued to do well at school. He believed his depression and anxiety were stable, although he was having some interpersonal issues with his ex-wife. Claimant's mental status examination, diagnoses, and GAF score remained the same.

On May 28, 2013, Claimant presented for maintenance in the suboxone clinic. (Tr. at 859-62). He reported that he was doing well. Claimant was still attending school full-time and had recently purchased a motorcycle. He denied any drug or alcohol use,

although his attendance at meetings had decreased. Claimant indicated that he would explore having his treatment transferred to the Beckley VAMC as that facility was much closer than the Salem VAMC. Claimant's mental status examination was normal, except his attention span was noted to be short. His diagnoses remained the same, and his GAF score was 40. (*Id.*)

On June 25, 2013, Claimant appeared for maintenance treatment at the suboxone clinic. (Tr. at 1272-77). He was still doing well in school. Claimant reported his frustration over unsuccessful attempts to arrange for PTSD treatment at the Beckley VAMC. However, he had finally arranged for an appointment on July 30. He stated that his symptoms of depression and anxiety had decreased. He had nightmares once every 2-3 weeks. Claimant felt his biggest issues were with anger and social isolation. He had started taking Celexa again and felt some improvement in his condition. Claimant's mental status examination was normal, although his attention span was still documented as "short." Claimant's diagnoses and GAF score remained the same.

Claimant continued to do well in August, September, October, November, and December 2013. (Tr. at 1249-1271). Claimant advised in October that he hoped to graduate the following year. He also mentioned that he and his ex-wife were back together, and Claimant felt that situation was helpful. He had stopped taking Celexa, but indicated that his symptoms had decreased, and he felt he could do well without the medication. In November, Claimant stated that school was keeping him busy, and he felt happy about being around positive people. Nonetheless, Claimant was unhappy that antisocial personality disorder was included in his diagnoses, explaining that he felt this diagnosis was directly related to his prior drug use. At the December visit, Claimant expressed looking forward to the holidays, indicating that he and his ex-wife were doing

well together. He was preparing for final examinations at school and felt good even without anti-depressant medication.

On January 7, 2014, Claimant presented to the suboxone clinic for maintenance. (Tr. at 1232-35). He reported that the holidays were always hard for him, but he felt he had gotten through them without too much difficulty. Claimant continued to do well at school, receiving four "A's" and one "B". He had decided to apply for a service-connected disability rating related to his PTSD and chronic obstructive pulmonary disease ("COPD") and had retained an attorney to assist him.

On February 4, 2014, Claimant stated that he was "doing great." (Tr. at 1227). However, when the clinician suggested lowering his dose of suboxone, Claimant wanted to first discuss the proposed change with the whole treatment team the following month. He was adamant that suboxone gave him the strength to resist temptations that were "ubiquitous in his living area." (Tr. at 1228). The following month, when tapering was again discussed, Claimant expressed anxiety and asked to have the decision delayed until after his disability determinations and school examinations were over. (Tr. at 1223).

### B. Evaluations and Opinions

On May 22, 2012, Holly Cloonan, Ph.D., completed a Psychiatric Review Technique in connection with Listing 12.06 (anxiety related disorders), Listing 12.08 (personality disorders), and Listing 12.09 (substance addiction disorders). (Tr. at 210-12). Dr. Cloonan found Claimant had mild limitations in completing activities of daily living and maintaining concentration, persistence, or pace. Based on Claimant's history of problems getting along with others, Dr. Cloonan felt Claimant had moderate limitations in maintaining social function. He had no history of episodes of decompensation, and the evidence did not establish the presence of the paragraph "C" criteria. Dr. Cloonan noted

that Claimant's medical records from the VAMC reflected a history of polysubstance abuse and treatment for opioid dependency. Nonetheless, Dr. Cloonan believed the records documented only a mild limitation in Claimant's mental functioning capacity. Dr. Cloonan felt that Claimant's statements were mostly credible, except for his allegations of mental function impairment, which were not fully supported by the medical records. Dr. Cloonan explained her conclusion by noting that, despite Claimant's significant history of substance abuse, his drug dependence was currently in sustained full remission.

That same date, Dr. Cloonan completed a Mental Residual Functional Capacity Assessment. (Tr. at 213-14). Dr. Cloonan found Claimant had no limitations in understanding, memory, or sustained concentration and persistence, but did have limitations with social interactions. He was not significantly limited in his ability to ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. However, Claimant was moderately limited in his ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Cloonan elaborated on these findings by stating that moderate impairment in interactions with the public or co-workers would be consistent with Claimant's diagnosis of antisocial personality disorder. Dr. Cloonan opined that Claimant did not appear to have adaption limitations and was capable of learning and performing work-like activities in a setting with no more than occasional interactions with the public and with co-workers.

James Binder, M.D., completed a Psychiatric Review Technique on September 8, 2012. (Tr. at 232-34). Dr. Binder found Claimant to have mild restrictions in activities of daily living and maintaining concentration, persistence, or pace. Claimant was also

moderately limited in maintaining social function. He had not experienced episodes of decompensation, and the evidence did not establish the paragraph "C" criteria. Dr. Binder explained his opinions by noting Claimant's extensive history of polysubstance dependence and treatment for opioid dependence. While Claimant's current mental status appeared to be no more than mildly limited, the records contained a diagnosis of antisocial personality disorder and demonstrated that Claimant had trouble getting along with others. Dr. Binder likewise found Claimant mostly credible, except for his allegations regarding significant impairment in mental functional capacity.

Dr. Binder also completed a Mental Residual Functional Capacity Assessment. (Tr. at 235-36). He found that Claimant had no limitations in understanding, memory, sustained concentration, and persistence. He did display limitations in social interactions. Claimant was not significantly limited in his ability to ask simple questions, request assistance, accept instructions, respond appropriately to criticism from supervisors, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. He was moderately limited in his ability to interact appropriately with the general public and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Binder opined that Claimant might have moderate impairment in interactions with the public and co-workers consistent with his history of antisocial personality disorder. He agreed with Dr. Cloonan's opinion that Claimant was able to learn and perform work-like activities in a setting with no more than occasional interactions with the public and co-workers.

Sunny S. Bell, M.A., completed a Disability Determination Examination on April 8, 2014. (Tr. at 1282-90). Ms. Bell observed that Claimant had normal posture and gait, but his hands trembled. He was generally pleasant and cooperative throughout the

evaluation. Claimant reported his various symptoms and conditions, indicating that he received treatment at the VAMC. Claimant recounted his military service, stating that he served as a combat engineer in Iraq. Claimant advised that his experiences in Iraq "irrevocably changed" him. He complained of having problems since 2006, when he returned from Iraq. Claimant was diagnosed with PTSD shortly thereafter. He described symptoms of depression, anxiety, recurrent dreams and nightmares, flashbacks, persistent thoughts of the war, avoidance behavior, abnormal startle response, feelings of estrangement, crying episodes, decreased and interrupted sleep, decreased energy, irritability, and feelings of isolation and apathy. A review of Claimant's medical records confirmed his diagnoses and treatment at the VAMC for PTSD, substance abuse, and arthralgias. He was currently receiving treatment through the VAMC's suboxone and mental hygiene clinics. Claimant told Ms. Bell he was "pretty stable" with his prescribed psychotropic medication.

On mental status examination, Claimant was cooperative and motivated. He interacted in a socially appropriate manner; generated spontaneous speech, and made good eye contact, but did not display a sense of humor. His speech was clear, goal directed, and relevant. Claimant was oriented to person, place, and time, but not to circumstance. He presented a restricted affect and depressed mood. His thought process; thought content; judgment; and immediate, recent and remote memory were within normal limits. Claimant's concentration was also found to be within normal limits. Ms. Bell assessed Claimant with PTSD; depressive disorder, not otherwise specified; panic disorder; and opioid use disorder, under maintenance therapy. Claimant described his daily activities as being a full-time student and assisting with housework, laundry, shopping, and yard work. Claimant could drive and run errands; he took walks and liked

to go fishing. His mother helped him manage his finances. As for social functioning, Claimant told Ms. Bell he visited family, attended church once a month and related well to the congregation. Claimant reported he was friendly with people but did not trust anyone. Ms. Bell found Claimant's pace and persistence were within normal limits but his prognosis was poor.

Ms. Bell also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), finding that Claimant had no limitations in understanding, remembering or carrying out instructions. Claimant was moderately limited in interacting appropriately with co-workers; however, he was found markedly limited in interacting appropriately with the public and supervisors, as well as responding to usual work situations and to changes in a routine work setting. Ms. Bell found Claimant's distrust of others and his anxiety and depression to be severe. Consequently, she believed that Claimant would have limited interest in people and would have difficulty making personal and social adjustments. Ms. Bell further opined that Claimant's attendance, pace, punctuality, and persistence were negatively affected due to his severe psychiatric symptoms, and his ability to remain alert might be impacted by the sedating side effects of his medications.

On May 2, 2014, Claimant underwent a Compensation and Pension ("C&P") evaluation at the VAMC in Beckley, West Virginia in relation to his request for service-connected disability benefits for PTSD. (Tr. at 1311-18). The examiner, Dr. Syed Safiullah, determined that Claimant had a diagnosis of PTSD that conformed to DSM-5 criteria. Claimant also had a diagnosis of opioid dependence; however, Dr. Safiullah felt the symptoms of the two diagnoses could be differentiated. He listed the symptoms associated with Claimant's PTSD to include: difficulty with people and with holding a job;

problems with mood, anger, patience; feeling uncomfortable with crowds; nervousness; panic attacks; interrupted sleep and nightmares; and intrusive thoughts. As to the level of occupational and social impairment secondary to Claimant's PTSD, Dr. Safiullah opined that Claimant would experience an occasional decrease in work efficiency and intermittent periods of inability to perform tasks, although he could generally function well with normal behavior, self-care, and conversation. Dr. Safiullah felt 70% of Claimant's social and occupational impairments were due to PTSD and 30% were caused by his opioid dependence.

In support of his findings, Dr. Safiullah reviewed Claimant's military history, which included his assignment to field artillery while in Iraq. Claimant was currently attending school at Concord University on the GI bill, taking social work courses, but often found himself thinking about how he would react if confronted with a situation like the one that had occurred at Virginia Tech. Claimant was receiving suboxone for opioid dependence, but was not currently taking any psychotropic medications. He was attempting to arrange outpatient psychological counseling. Dr. Safiullah discussed Claimant's stressors, symptoms, and diagnostic criteria. He documented his observations of Claimant, noting that Claimant appeared anxious. Although he made fleeting eye contact and had a worried look on his face, Claimant was alert and oriented, with intact memory, insight, and judgment. Dr. Safiullah concluded by stating that Claimant's PTSD was as least as likely to be service-connected as not and his symptoms were moderate. Dr. Safiullah concluded that Claimant probably needed to restart psychiatric treatment at the VAMC, with both medications and counseling.

### C.  New Evidence

Claimant attaches three exhibits to his motion for judgment on the pleadings,

which contain evidence not supplied to the ALJ or the Appeals Council. Exhibit A is a June 5, 2014 disability ratings decision issued by the VA, indicating that Claimant was awarded a 40% disability rating related to fibromyalgia and an overall disability rating of 40%. (ECF No. 9-1). The decision explicitly deferred ruling on Claimant's disability claims arising from other medical conditions until C&P examinations could be performed. (*Id.*). Exhibit B is a September 2, 2014 VA disability ratings decision, finding that Claimant also had a 30% disability rating due to PTSD and a 10% disability rating for tinnitus, with a combined disability rating of 60%, effective January 28, 2014. (ECF No. 9-2). Exhibit C is a January 6, 2016 VA disability ratings decision with an associated decision issued by a VA Decision Review Officer in November 2015. (ECF No. 9-3). In Exhibit C, the VA increased Claimant's disability rating for PTSD from 30% to 50%, effective January 28, 2014, and his disability rating for tension headaches (previously evaluated with fibromyalgia) from 10% to 30%, effective November 16, 2015, with a combined disability rating of 70%, effective January 28, 2014, and 80% effective August 11, 2014. (*Id.*). In the attached decision by the Decision Review Officer, a rationale is provided for increasing Claimant's disability ratings, and a list of the evidence underlying the decision is included.

In addition to the new evidence, Claimant submitted several sets of medical records from the VAMC to the Appeals Council. (Tr. at 14-157). The Appeals Council declined to incorporate the proffered medical evidence into the record, noting that all of the records post-dated the ALJ's decision and, consequently, were "about a later time." (Tr. at 9). As a result, neither the Appeals Council nor the ALJ considered medical information that, in part, formed the basis of the VA's January 2016 disability ratings decision.

## VI.    Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.    Discussion

As previously stated, Claimant raises two challenges to the Commissioner's

decision. First, he argues that records detailing his disability ratings from the VA constitute new and material evidence justifying remand. Second, he claims that the ALJ failed to properly explain how the RFC finding accounts for Claimant's moderate limitations in concentration, persistence, or pace. Each challenge will be address in turn.

### A. Remand for Consideration of VA Disability Ratings

A court may remand the Commissioner's decision for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand is appropriate when the Commissioner's decision is not supported by substantial evidence, the Commissioner incorrectly applies the law in reaching the decision, or the basis of the Commissioner's decision is indiscernible. *See Brown v. Astrue,* Case No. 8:11–03151–RBH–JDA, 2013 WL 625599 (D.S.C. Jan. 31, 2013) (citations omitted). In contrast, a sentence six remand "may be ordered in only two situations: (1) where the Commissioner requests remand before answering the complaint, or (2) where new, material evidence is adduced that was for good cause not presented before the agency." *Snider v. Colvin,* Civil Action No. 6:12-cv-00954, 2013 WL 4880158, at *4 (S.D. W. Va. Sept. 12, 2013) (*citing Shalala v. Schaefer,* 509 U.S. 292, 297, n.2 (1993)). For the purposes of a sentence six remand, evidence is considered new only if it is not "duplicative or cumulative." *Wilkins v. Sec., Dep't of Health and Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991); *see, also, Bradley v. Barnhart,* 463 F.Supp.2d 577, 581 (S.D. W. Va 2006). New evidence is material if it "bear[s] directly and substantially on the matter in dispute," and generates a "reasonable possibility that the new evidence would have changed the outcome of the determination." *Bradley,* 463 F.Supp.2d at 579-80, (citing *Bruton v. Massanari,* 268 F.3d 824 (9th Cir. 2001)).

In this circuit, a remand under sentence six for assessment of new and material evidence is appropriate if four prerequisites are met: (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had that evidence been presented; (3) good cause for failure to submit the evidence before the Commissioner is established; and (4) Claimant offers "at least a general showing of the nature" of the newly discovered evidence. 42 U.S.C. 405(g); *Borders,* 777 F.2d at 955. The burden of showing that remand is appropriate rests with the claimant. *See Fagg v. Chater,* 1997 WL 39146, at *2 (4th Cir.1997); *Ferguson v. Commissioner of Social Sec.,* 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). "With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings." *Hay v. Colvin*, No. 8:15-CV-00236-JDA, 2016 WL 536746, at *3 (D.S.C. Feb. 11, 2016) (citations omitted).

Because Claimant must meet all four prerequisites to support his request for remand, the undersigned need not analyze them in order. As the fourth prerequisite can be easily dispatched, the undersigned considers it first. The undersigned **FINDS** that Claimant has clearly fulfilled his duty to make a general showing of the purported new evidence by attaching the disability ratings decisions as exhibits to his motion for judgment on the pleadings. (ECF Nos. 9-1, 9-2, 9-3). Consequently, the three remaining prerequisites must be examined. Having reviewed the Exhibits, and noting that the dates of the some of the disability determinations pre-date the Appeals Council's refusal of Claimant's request for review, the undersigned will next analyze the third prerequisite, the "good cause" requirement.

To satisfy the third prerequisite, Claimant must show "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). As Claimant was free to submit new evidence at any stage of the administrative proceedings, 20 C.F.R. §§ 404.970(b), 416.1470(b), he must now provide a reasonable justification for his failure to acquire and submit the three VA determinations before the Commissioner's decision became final. Exhibit A, (ECF No. 9-1), was sent to Claimant on June 5, 2014, prior to the administrative hearing in July. Claimant was unquestionably aware of the VA's determination, as he testified at the administrative hearing that the VA had awarded him a 40% service-connected disability for fibromyalgia. (Tr. at 197). Nevertheless, he never supplied the disability ratings decision to the ALJ. In his motion for judgment on the pleadings, Claimant acknowledges his obligation to show good cause for failing to submit the Exhibit, yet offers nothing more than a bare assertion that Exhibit A was "not available" at the time of the administrative hearing. (ECF No. 9 at 10). Even if true, that fact does not constitute good cause, because the obligation to submit new and material evidence exists until the ALJ's decision is made final by the Appeals Council. *See Jones v. Colvin*, No. 6:12-CV-00067, 2014 WL 359672, at *8–11 (W.D. Va. Feb. 3, 2014) ("[G]ood cause must be shown for failure to incorporate new evidence into the record not only at the ALJ stage of review, but also at the Appeals Council level.") (citing *Miller v. Astrue,* No. 2:07CV00056, 2008 WL 3285757, at *22 (W.D.Va. Aug. 8, 2008)). The Appeals Council did not issue its decision until December 23, 2015, more than a year and a half after the VA's June 2014 disability determination. Claimant provides no explanation for failing to obtain and submit Exhibit A during that protracted period. For similar reasons, Claimant fails to show good cause for his delay in tendering Exhibit B, the September 2014 disability rating. (ECF No. 9-2). Although Exhibit B did not exist prior to the ALJ's

written decision, Exhibit B was prepared well before the Appeals Council's ruling and should have been properly and timely submitted. Indeed, Claimant provided the Appeals Council with multiple sets of medical information from the VA during the pendency of the request for review. Inexplicably, he never supplied the June and September 2014 disability ratings decisions. Therefore, the undersigned **FINDS** that Claimant has not shown good cause for failing to incorporate in the record Exhibits A and B, and those Exhibits cannot be considered as justification for a sentence six remand.

In contrast, Claimant does show good cause for not supplying Exhibit C, the January 2016 disability ratings decision and supporting documents. (ECF No. 9-3). As Claimant points out, Exhibit C did not exist at the time of the administrative proceedings. Accordingly, Exhibit C could not have been incorporated into the record by the ALJ or the Appeals Council. As such, the undersigned **FINDS** that Exhibit C may provide a basis for remand under sentence six if Claimant can demonstrate that Exhibit C satisfies the remaining two prerequisites.

Thus, the Court next considers whether Exhibit C is relevant, is not duplicative or cumulative, and is material. The Fourth Circuit has held that "a subsequent favorable [disability]decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." *Baker v. Comm'r of Soc. Sec.*, 520 F. App'x 228, 229 (4th Cir. 2013) (quoting *Allen v. Commissioner,* 561 F.3d 646, 653 (6th Cir. 2009)). In this case, Exhibit C contains more than just the disability rating decision. It also includes an explanation for the VA's determination and a list of the evidence relied upon by the VA to reach its decision. Some of the relevant evidence considered by the VA was made a part of the record by the ALJ; some of the evidence was provided to, but not considered by, the Appeals Council; some did not exist during the

administrative process; and some existed, but was never tendered by Claimant. (Tr. at 9, 15-157). Obviously, the evidence considered by the VA that was also incorporated into the administrative record by the ALJ would be duplicative. However, the undersigned **FINDS** that the *ex post facto* evidence, the evidence not considered by the Appeals Council, and the evidence never tendered during the disability determination proceeding are not cumulative or duplicative. Moreover, the undersigned **FINDS** that Exhibit C is clearly relevant, at least to the extent it pertains to Claimant's PTSD and overall disability rating, because it concerns one of the same conditions considered by the ALJ, and speaks directly to the severity of that condition during the relevant period.

Lastly, the undersigned **FINDS** that Exhibit C contains material evidence, because there is a reasonable possibility that the Commissioner's decision might have been different if the VA's PTSD and combined disability ratings had been available to the ALJ or the Appeals Council. Social Security Ruling ("SSR") 06-03p mandates that even partial disability ratings by other agencies are to be considered and weighed by the ALJ in determining disability under the Social Security Act. SSR 06-03p states, *inter alia*, the following:

> Under sections 221 and 1633 of the Act, only a State agency or the Commissioner can make a determination based on Social Security law that you are blind or disabled. ... However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)).
> ...
>
> These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules.

SSR 06-03p, 2006 WL 2329939, at *6-7 (Aug. 9, 2006). In other words, adjudicators gain

"insight into the [claimant's] mental and physical impairments" by carefully considering the conclusions of other agencies and, for that reason, are required to evaluate and weigh them. *See, also, Bird v. Commissioner of Soc. Sec,* 699 F.3d 337 (4th Cir. 2012).

In *Bird,* the Fourth Circuit discussed the role that VA disability ratings should play in the SSA's disability determination process. To begin, the Fourth Circuit confirmed the basic rule that other agency decisions, while not binding on the SSA, "cannot be ignored and must be considered" when evaluating a claimant's eligibility for social security disability benefits. *Id.* at 343 (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 n. 1 (4th Cir. 1983) and SSR 06-03p, 2006 WL 2329939, at *6). With respect to the VA, the Fourth Circuit acknowledged that it had never explicitly addressed the precise weight the SSA should afford to VA disability ratings. Reviewing the law of other jurisdictions, the Fourth Circuit pointed out that varying degrees of deference had been given to the VA's determinations. The Fourth Circuit reasoned that even though courts differed on the amount of weight to give, "[t]he assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* The Court added, "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (citing *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002)). Noting that "the purpose and evaluation methodology of both programs are closely related," the Fourth Circuit concluded that "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* As a result, the Fourth Circuit mandated

as follows:

> [I]n making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.*

The Appeals Council refused to consider evidence collected after the ALJ's decision, indicating that it pertained to "a later time." (Tr. at 9). However, in his November 2015 decision, the VA Decision Review Officer explained that treatment records and C&P examinations prepared in 2015 were relied upon in reaching the conclusion that Claimant's PTSD was more severe in January 2014 than originally determined by the VA. The VA's retrospective use of information is consistent with the disability determination process set out in the Social Security Act. *See Bird,* 699 F.3d at 340 ("Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI."). "Additionally, the *Bird* decision held that such retrospective medical evidence 'is especially appropriate when corroborated by lay evidence,' including testimony of a claimant about his pre-date last insured condition." *Slaughter v. Colvin*, No. 814CV04760BHHJDA, 2016 WL 3381286, at *13 (D.S.C. May 23, 2016), *report and recommendation adopted,* No. CV 8:14-4760-BHH, 2016 WL 3227184 (D.S.C. June 13, 2016) (quoting *Bird,* 699 F.3d at 341-42).

Here, Claimant was diagnosed with PTSD in 2006. He stated that his symptoms improved and were relatively stable until November 2011, when he was brutally attacked by two men. Claimant's description of the severity and persistence of his PTSD symptoms

was corroborated to a degree by the medical records and the written statement of his ex-wife. Nevertheless, based on other evidence before the ALJ, he discounted the reliability of Claimant's statements. The substantial evidentiary weight of the VA's 50% PTSD disability rating may certainly have altered the ALJ's analysis of Claimant's credibility and RFC, which in turn may reasonably have altered the ALJ's other findings.

The Commissioner argues that the new and material evidence does not require remand because that evidence supports the ALJ's decision that Claimant was not disabled. (ECF No. 12 at 10). The Commissioner emphasizes that Claimant's condition improved after the 2011 assault such that he was able to successfully complete college. Moreover, the Commissioner contends that the VA's ratings decision confirms that Claimant is capable of performing simple, unskilled work. While the Commissioner's determination of non-disability may ultimately prevail, the Court is not at liberty to weigh the new evidence or resolve conflicts in the record. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015). It has never been the province of the district court "to engage in these [fact-finding] exercises in the first instance." *Id. (*quoting *Radford v. Colvin,* 734 F.3d 288, 296 (4th Cir.2013)). Therefore, the undersigned **FINDS** that the decision of the Commissioner should be remanded under sentence six to allow the ALJ to analyze and weigh Exhibit C to the extent it addresses Claimant's PTSD and combined disability ratings, as well as the additional medical records and examinations that resulted in the VA's decision to increase Claimant's disability percentages effective January 2014, the date of his initial application for VA benefits.

### B. Adequacy of the RFC Finding

Claimant also asserts that the ALJ erred by failing to address Claimant's moderate limitations in concentration, persistence, or pace when the ALJ constructed the RFC

finding and posed the controlling hypothetical question. The Court need not consider this challenge in depth, as the impact of the VA disability ratings decision on Claimant's RFC finding will certainly be considered as part of the ALJ's analysis on remand. Nevertheless, the undersigned **FINDS** that in the course of reconsidering the evidence, including the new and material evidence, the ALJ should more fully examine the issue of Claimant's moderate limitations in persistence, pace, or concentration. As an example, the ALJ should weigh the opinion of Sunny Bell that "[Claimant's] attendance, pace, punctuality, and persistence are all negatively affected by the severity of his psychiatric symptoms. His alertness may be [sic] diminished about sedating side effects of some of his medications;" the ALJ should discuss how that opinion may be reflected in the RFC finding. (Tr. at 1289). The ALJ rejected Ms. Bell's opinions regarding Claimant's limitations in maintaining social functioning and in adapting to changes in the workplace, but did not comment on her opinion regarding Claimant's persistence, pace, and concentration. Implicitly, the ALJ accepted the opinion as it is consistent with his finding of moderate limitations in the related functional category. However, it is unclear whether the moderate limitations are reflected in the RFC finding. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) ("[W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.") (citation omitted). Although the ALJ need not discuss every piece of evidence in the record, there is contradictory evidence regarding Claimant's ability to stay on task, and the ALJ never clearly resolved the conflict. As the Commissioner stressed, on the one hand, Claimant was able to attend college full-time, obtain a Bachelor's Degree, run errands, do yard work, and fish, all of which require persistence, concentration, and pace. On the other

hand, the ALJ found that Claimant had moderate limitations in maintaining those functions and Ms. Bell provided a similar opinion. However, how that evidence was synthesized and resulted in the RFC finding was never articulated. Consequently, on remand, the ALJ should more fully explain how Claimant's limitations were accounted for in the RFC finding and controlling hypothetical question.

## VIII. <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 9), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 12); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; **CLOSE** this case statistically and **PLACE** it on the Court's inactive docket, subject to reopening statistically upon motion of either party pending the outcome of the administrative proceedings.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension

of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** April 10, 2017

Cheryl A. Eifert
United States Magistrate Judge